IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TOMMY JAMES GAGLIANO,

                                   Civil No. 06-458-MO

       Petitioner,

   v.

STANLEY MAZUR-HART,

                             OPINION AND ORDER

       Respondent.

       Anthony D. Bornstein
       Assistant Federal Public Defender
       101 S.W. Main Street, Suite 1700
       Portland, Oregon 97204

              Attorney for Petitioner

       John R. Kroger
       Attorney General
       Jonathan W. Diehl
       Assistant Attorney General
       Department of Justice
       1162 Court Street NE
       Salem, Oregon 97310

              Attorneys for Respondent

///

     1 - OPINION AND ORDER

MOSMAN, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 in which he seeks to challenge the legality of his underlying state convictions for Identity Theft and Computer Crime. For the reasons which follow, the Corrected Amended Petition for Writ of Habeas Corpus (#42) is denied.

<u>**BACKGROUND**</u>

On October 17, 2001, the Lane County Grand Jury indicted petitioner on twelve counts of Identity Theft and twelve counts of Computer Crime. Respondent's Exhibit 103. Within a week of petitioner's arraignment, Dr. George Suckow conducted a psychological evaluation of petitioner and determined that he was not competent to proceed. Respondent's Exhibit 109, p. 2. On December 3, 2001, the trial court concluded that petitioner was not fit to proceed and ordered him to be treated at the Oregon State Hospital until he was competent to proceed. Respondent's Exhibit 118.

Following treatment at the Oregon State Hospital, two psychologists, Carlene Shultz and Alexander Burt, concluded that petitioner's "Bipolar Disorder with psychosis was reasonably controlled on his medications" an deemed petitioner "able to understand the charges and legal proceedings and able to assist coun[sel] to participate in his defense." Respondent's Exhibit 109, p. 3. However, by April 9, 2002, petitioner's condition had

deteriorated, prompting Dr. Donald Dravis of the Oregon State Hospital to conclude that petitioner could not effectively assist counsel in the criminal proceedings. *Id.* Dr. Davis recommended that petitioner continue his hospitalization.

In a report to the trial court dated June 18, 2002, Dr. Schultz concluded that petitioner had "no symptoms of mental illness that would interfere with his ability to aid and assist coun[sel]." *Id* at 4. More than four months later, Dr. McDonald similarly "concluded that the defendant had no impairment in his ability to aid and assist coun[sel]," and was likewise able to appreciate the wrongfulness of his own actions conform his behavior to the requirements of the law. Respondent's Exhibit 103, p. 5.

Petitioner's trial attorney sought another psychological evaluation from Dr. Karen Crocker-Wensel. Following two evaluations in January of 2003, Dr. Crocker-Wensel concluded that petitioner was aware of the charges against him and the guilty but for insanity defense. Respondent's Exhibit 109, p. 7. She was of the opinion that petitioner was competent to stand trial, but was incapable of conforming his actions to the law at the time he committed his crimes. *Id* at 9.

On February 12, 2003, petitioner agreed to waive his right to a jury trial and proceed with a stipulated facts trial. Respondent's Exhibit 121. Following the stipulated facts trial, the court found petitioner guilty of six counts of Identity Theft

3 - OPINION AND ORDER

and six counts of Computer Crime.  Respondent's Exhibit 104, p. 6.
The court then sentenced petitioner to 720 months under the
jurisdiction of the Psychiatric Security Review Board ("PSRB").

Petitioner filed a direct appeal, but later voluntarily
dismissed it.  Respondent's Exhibit 105.  He then filed for post-
conviction relief ("PCR") in Marion County where the PCR trial
court denied relief on all of his claims.  Respondent's Exhibits
124-25.  The Oregon Court of Appeals affirmed the lower court
without opinion, and the Oregon Supreme Court denied review.
*Gagliano v. Mazur-Hart*, 202 Or.App. 440, 125 P.3d 101 (2005), *rev.
denied*, 340 Or. 157, 130 P.3d 786 (2006).

Petitioner filed his Corrected Amended Petition for Writ of
Habeas Corpus in this case on May 23, 2008 raising three claims:

1.    Trial counsel failed to fully advise his impaired
      client concerning the waiver of his right to a jury
      trial and his actual sentencing exposure in
      violation of petitioner's Sixth Amendment right to
      effective assistance of counsel;

2.    The trial court violated petitioner's Fourteenth
      Amendment right to due process and his Sixth
      Amendment Right to a jury trial because his waiver
      of his right to a jury trial was not knowing,
      intelligent or voluntary; and

3.    The State violated petitioner's Fourteenth
      Amendment right to due process by convicting him in
      a stipulated facts trial at which he was
      incompetent to stand trial.

Respondent asks the court to deny relief on the Corrected
Amended Petition because: (1) petitioner failed to fairly present
all of his claims to the Oregon state courts, leaving them

4 - OPINION AND ORDER

procedurally defaulted; and (2) to the extent the claims were fairly presented, the state court decisions denying relief on them are entitled to deference.

### DISCUSSION

### I.  Exhaustion and Procedural Default.

A petitioner seeking habeas relief must exhaust his claims by fairly presenting them to the state's highest court, either through a direct appeal or collateral proceedings, before a federal court will consider the merits of habeas corpus claims pursuant to 28 U.S.C. § 2254. *Rose v. Lundy*, 455 U.S. 509, 519 (1982). A petitioner must have also present his claims in a procedural context in which its merits can be considered. *Castille v. Peoples*, 489 U.S. 346, 351 (1989). The exhaustion doctrine is designed "to avoid the unnecessary friction between the federal and state court systems that would result if a lower federal court upset a state court conviction without first giving the state court system an opportunity to correct its own constitutional errors." *Preiser v. Rodriguez*, 411 U.S. 475, 490 (1973).

In his supporting memorandum, petitioner acknowledges that his Ground Three claim was never raised in the state courts, but asserts that a claim of substantive incompetency should not be subject to exhaustion and procedural default. As petitioner concedes, the rules of exhaustion and procedural default apply to such claims in the Ninth Circuit. *Martinez-Villareal v. Lewis*, 80

F.3d 1301 (9th Cir. 1996).  Because such claims are subject to the default bar, and as petitioner made no attempt to present his Ground Three claim during any of his state court proceedings, the claim is procedurally defaulted.

Petitioner argues that his default with respect to his Ground Three claim should be excused because he can show cause and prejudice.  In order to demonstrate "cause," petitioner must show that some objective factor external to the defense impeded his efforts to fairly present the claim in state court. *Vansickel v. White*, 166 F.3d 953, 958 (9th Cir.), *cert. denied*, 528 U.S. 965 (1999); *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  A petitioner meets the "prejudice" standard if he can demonstrate that the errors he complains of undermine confidence in the outcome of his trial.  *Vansickel*, 166 F.3d at 958-59.

As cause, petitioner points to trial counsel's affidavit in the PCR trial court where he attested as follows:

> 2.    In late September of 2002, I retained Dr. James MacDonald to do a fitness to proceed evaluation. When petitioner was found fit to proceed I asked Dr. MacDonald for new tests to determine incapacitation and ability to conform.  The report from Dr. MacDonald which was final in early December would not allow for a [guilty but for insanity] plea bargain.

Respondent's Exhibit 115, p. 2.

According to petitioner, this constitutes a false representation by counsel that the trial court had made a specific finding declaring petitioner competent to proceed.  He therefore

6 - OPINION AND ORDER

reasons that counsel's false representation to the PCR trial court effectively thwarted the development of his Ground Three competency claim, thereby establishing cause for the default.

Counsel's affidavit made no mention of a court determination of competency.  His affidavit was written in the passive voice and is best understood to mean that Dr. MacDonald determined that petitioner was competent to assist in his defense.  As such, the affidavit does not constitute cause sufficient to excuse the default.

Even assuming counsel had made the misrepresentation petitioner's argument urges, and further assuming such a misrepresentation would have effectively prevented PCR counsel from developing any of his own evidence to support petitioner's Ground Three claim, petitioner still cannot establish cause for the default.  Counsel's affidavit was filed only two days prior to the PCR trial.  It is therefore not reasonable to conclude that the affidavit thwarted PCR trial counsel's investigation into petitioner's competency claim.  For all of these reasons, petitioner's default of his Ground Three claim is not excused.

Respondent also asserts that, although petitioner raised Grounds Two and Three to the PCR trial court, they are procedurally defaulted because they were not included in the *Balfour* briefs

filed on appeal.[1]   Because Grounds One and Two fail on their merits, the court declines to decide the exhaustion issue.  *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").

## II.  <u>Standard of Review</u>.

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that

---

[1]  Oregon's *Balfour* procedure provides that counsel need not ethically withdraw when faced with only frivolous issues.  Rather, the attorney may file Section A of an appellant's brief containing a statement of the case sufficient to "apprise the appellate court of the jurisdictional basis for the appeal."  The defendant may then file the Section B segment of the brief containing any assignments of error he wishes to raise.  *State v. Balfour*, 311 Or. 434, 451-52, 814 P.2d 1069 (1991).

contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

Petitioner argues that the state court findings in this case are not entitled to deference because the PCR trial court used an incorrect "preponderance of the evidence" standard in assessing his claims. ORS 138.620(2) governs the burden of proof in Oregon's PCR proceedings, and requires only that "[t]he burden of proof of **facts** alleged in the petition shall be upon the petitioner to establish such **facts** by a preponderance of the evidence." ORS 138.620(2) (emphasis added). Oregon law does not require PCR courts to misapply any governing legal standards, and the PCR trial court did not do so in petitioner's case. The PCR trial court merely applied the preponderance of the evidence standard to the facts of the case

as it was required to do.    Courts have repeatedly held that litigants seeking to prevail in a PCR proceeding must prove the facts of their case by a preponderance of the evidence.  *Holland v. Jackson*, 542 U.S. 649, 654 (2004); *Alcala v. Woodford*, 334, 862, 869 (9th Cir. 2003); *Davis v. Woodford*, 333 F.3d 982, 991 (9th Cir. 2003).   The court therefore lends deference to the state court decisions as required by the Anti-Terrorism and Effective Death Penalty Act.

**III.** **<u>Ground One: Ineffective Assistance of Counsel</u>**.

Petitioner alleges that his trial attorney failed to properly advise him concerning the waiver of his right to a jury trial and his exposure to a 60-year PSRB sentence.   According to petitioner's PCR deposition testimony, trial counsel told him that he "was going to get six months, probably at the hospital, to straighten up my act and stuff like that and to keep my nose clean and that would be it."  Respondent's Exhibit 117, p. 9.   He also informed the PCR trial court that counsel erroneously told him that if he agreed to the stipulated facts trial, he would later be allowed to transfer to the jurisdiction of a psychiatric security review board in Nevada to be closer to his family.  Respondent's Exhibit 106, p. 2.

The Supreme Court has established a two-part test to determine whether a petitioner has received ineffective assistance of counsel.   First, the petitioner must show that his lawyer's

performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-687 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, the petitioner must show that his lawyer's performance prejudiced the defense. The appropriate test for prejudice is whether the defendant can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. In proving prejudice, petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have agreed to a stipulated facts trial and would have insisted on proceeding with a jury trial. *Cf. Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

In this case, the PCR trial court made the following findings of fact pertinent to this claim:

> 4.    Trial counsel discussed with petitioner at length the possible maximum and minimum terms of imprisonment he would serve if he were to proceed to trial and be found guilty after a trial on all counts within the indictment. Trial counsel also explained to petitioner the maximum amount of time he could be subject to Psychiatric Security Review Board Jurisdiction if he entered a Guilty but for Insanity plea or proceeded via a stipulated facts trial. Trial counsel did not tell petitioner that he could transfer to a hospital in Nevada if he entered a Guilty for but Insanity plea or proceeded via a stipulated facts trial. Trial counsel did advise petitioner very clearly that he would be

11 - OPINION AND ORDER

subject to the jurisdiction of the PSRB for a period of 60 years.

\* \* \* \* \*

7.  Petitioner's claim that counsel promised him he would serve a term between 6-24 months under the PSRB is not credible. The trial court reviewed the jury waiver with petitioner before allowing the stipulated facts trial to proceed and trial counsel thoroughly reviewed the jury waiver with petitioner.

Respondent's Exhibit 124, pp. 4-5. These facts are entitled to a presumption of correctness. 28 U.S.C. § 2254(e)(1).

Petitioner asserts that the PCR trial court's findings are unreasonable in light of the record presented to it. Specifically, he points to: (1) an October 12, 2002 letter to his trial attorney wherein petitioner thanks counsel for reaching a deal with the State which would allow him to go home early; and (2) a January 14, 2003 report authored by Dr. Crocker-Wensel which revealed that petitioner believed the prosecution only wanted him to serve 22-24 months. Respondent's Exhibit 109, p. 7.

The evidence plaintiff highlights for the court was not uncontroverted. Trial counsel submitted an affidavit for the PCR trial court's consideration which contained the following:

Petitioner spoke to me many times and at great length about the possibility of spending 12 years in prison or the rest of his life under the control of the PSRB. Petitioner signed the waiver with full advice and consent. I never told petitioner that he could transfer to Nevada. I told him that he would be under the control and authority of the PSRB for sixty years. I advised him that all of his requests must be made to the PSRB. I explained that they would decide where and under what

conditions his confinement would take place. We had many conversations over a long period of time.

Respondent's Exhibit 115, p. 2.

The PCR trial court resolved this credibility contest in counsel's favor, and petitioner's evidence does not provide clear and convincing proof that the credibility determination was incorrect. Indeed, even crediting petitioner's evidence as true, he was not found guilty until February 12, 2003--one month after Dr. Crocker-Wensel's report and four months after his letter to counsel. It is impossible to definitively establish what conversations transpired between counsel and petitioner between January 14 and February 12, 2003. As a result, petitioner cannot overcome the presumption of correctness which attaches to the PCR trial court's factual findings.

Taking the PCR trial court's factual findings as true, petitioner was adequately advised leading up to his decision to waive his right to a jury trial. As a result, he cannot prove that counsel's performance fell below an objective standard of reasonableness. Accordingly, the PCR trial court's conclusion that petitioner did not suffer from ineffective assistance of counsel is neither contrary to, nor an unreasonable application of, clearly established federal law.

///

///

///

13 - OPINION AND ORDER

IV.  **Ground Two: Involuntary Waiver of Jury Trial.**

In Ground Two, petitioner alleges that his waiver of his right to a jury trial was not knowing, voluntary, and intelligent.  The claim he presented to Oregon's state courts was as follows:

> . . . [P]etitioner's waiver was defective because he did not fully understand the consequences of waiving his rights.  Trial counsel's failures listed in petitioner's [ineffective assistance of counsel claim] created this misunderstanding.  Petitioner would not have agreed to a stipulated facts trial before the judge if he had known it would result in a 60-year sentence in the care of the Psychiatric Security Review Board, without the possibility of a transfer to Nevada to be near his family.

Respondent's Exhibit 106, p. 3.[2]

By its terms, this due process claim is dependent on petitioner's claim of ineffective assistance of counsel.  However, as discussed above, the PCR trial court's factual findings are entitled to a presumption of correctness which petitioner has not overcome.  Taking the PCR trial court's factual findings as true, petitioner was not misadvised by his attorney, therefore his waiver of his right to a jury trial was neither unknowing nor involuntary.  Accordingly, the PCR trial court's decision denying relief on

---

[2]  While petitioner now seeks to raise separate arguments pertaining to omissions by the trial judge, such arguments were not part of the claim presented to the PCR trial court.  As such, while the court overlooks petitioner's failure to fairly present his Ground Two Claim to the Oregon Court of Appeals and the Oregon Supreme Court, it does hold him to the claim which he presented to the PCR trial court.  *See Holland v. Jackson*, 542 U.S. 649, 652 (2004) ("whether a state court's decision was unreasonable must be assessed in light of the record the court had before it").

petitioner's due process claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

**V.    <u>Evidentiary Hearing</u>.**

Finally, petitioner asks the court to expand the record to include several exhibits he offers in support of his claims, and also asks the court to conduct an evidentiary hearing.  Respondent objects to expansion of the record to include Petitioner's Exhibits A-E and G.  Respondent also objects to petitioner's request for an evidentiary hearing.

Petitioner's attempt to expand the record with his Petitioner's Exhibits is subject to the same requirements as his request for an evidentiary hearing.  *Holland v. Jackson*, 124 S.Ct. 2736, 2738 (2004).  Accordingly**,** if petitioner has failed to develop his claim in the state courts, he may only supplement the record or be granted an evidentiary hearing if his claim relies on: 1) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or 2) a factual predicate that could not have been previously discovered through the exercise of due diligence. 28 U.S.C. § 2254(e)(2)(A)(i) and (ii).  He must also demonstrate that the facts underlying the claim are sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found him guilty of the underlying offense. 28 U.S.C. § 2254(e)(2)(B).

15 - OPINION AND ORDER

Petitioner's Exhibits at issue are made up of the following:

Exhibit A:      Billing records of petitioner's trial
                counsel, stamped received by the Judicial
                Administrator of Lane County on February
                18, 2003;

Exhibit B:      Letter dated September 27, 2002, from Dr.
                McDonald to trial counsel;

Exhibit C:      A June 18, 2002 psychological evaluation
                from Dr. McDonald;

Exhibit D:      Dr. McDonald's evaluation of petitioner
                dated November 29, 2002;

Exhibit E:      An Oregon State Hospital Evaluation
                Report from Dr. Dravis dated January 3,
                2002; and

Exhibit G:      An Evaluation Report from Dr. Les Goldman
                dated March 20, 2008.

With the exception of Dr. Goldman's report from March 2008, all of these exhibits were readily available for production during petitioner's PCR trial which effectively began with his February 2004 Second Amended Petition for Post-Conviction Relief. Respondent's Exhibit 106. Dr. Goldman's report (Petitioner's Exhibit G) is a new psychological evaluation conducted for purposes of this habeas corpus action. While the report was clearly not available during the state court proceedings, petitioner could have developed such a report for consideration by the PCR trial court. The Petitioner's Exhibits offered in this federal habeas action could have been developed with the exercise of due diligence during petitioner's state court proceedings. Because petitioner failed to do so, and as he cannot meet the other requirements of §

16 - OPINION AND ORDER

2254(e)(2), the court has not supplemented the record with Petitioner's Exhibits.

Similarly, petitioner presents no valid reason to hold an evidentiary hearing in this federal habeas action when he could have developed his evidence during his full PCR trial in Oregon's state courts. Accordingly, petitioner's request for an evidentiary hearing is denied.

<u>**CONCLUSION**</u>

For the reasons identified above, the Corrected Amended Petition for Writ of Habeas Corpus (#42) is DENIED.

IT IS SO ORDERED.

DATED this ___16___ day of March, 2009.

                        ___/s/Michael W. Mosman___
                           Michael W. Mosman
                           United States District Judge

17 - OPINION AND ORDER